UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ERICA HAHN, | : | |
| | : | 3:19-cv-00706-KAD |
| Plaintiff | : | |
| | : | |
| v. | : | JULY 16, 2019 |
| | : | |
| GARTNER, INC., | : | |
| | : | |
| Defendant | : | |
| | : | |

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS TWO, THREE AND FOUR OF PLAINTIFF'S AMENDED COMPLAINT

Plaintiff Erica Hahn ("Plaintiff" or "Ms. Hahn") files the instant memorandum in opposition to Defendant Gartner, Inc.'s ("Defendant" or "Gartner") Motion to Dismiss Counts Two, Three and Four of Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).

## I.    INTRODUCTION

Gartner has moved to dismiss Ms. Hahn's Amended Complaint for alleged failure to state claims for which relief can be granted, however, Plaintiff's allegations satisfy the pleading requirements of Federal Rule of Civil Procedure Rule 12(b)(6), stating plausible claims to relief as to each count. Accordingly, the Court must deny Defendant's motion.

First, Gartner claims that Counts Two, Three and Four of Plaintiff's Amended Complaint should be dismissed because Florida law should apply, however this is inaccurate.  Counts Two and Three are properly brought under the Connecticut Fair Employment Practices Act and the Connecticut Whistleblower Statute, as determined by this state's conflicts of law rules, and, with regard to Count Four, Connecticut choice of law principles dictate that the Court apply

Connecticut law to Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

First, Connecticut courts have applied the whistleblower statute even where an employee's whistleblowing is done internally, and not to public or governmental body. *See Key v. Wal–Mart, Inc.*, 2004 U.S. Dist. LEXIS 21107 (D. Conn. Sept. 29, 2004); *see also Parmenter v. Wal–Mart Stores, East, L.P.*, 2007 U.S. Dist. LEXIS 51478 (D. Conn. July 14, 2007) (finding that Connecticut General Statute § 31-51m preempts common law wrongful discharge action even when elements of statute are not met); *see also McClain v. Pfizer, Inc.*, 2008 U.S. Dist. LEXIS 17757 (D. Conn. Mar. 7, 2008) ("[T]he whistleblower statute preempts all contract and tort claims for wrongful termination based on whistleblowing activities").

Second, under Connecticut law, which is controlling in this case, a discharged at-will employee may bring a cause of action for breach of implied covenant of good faith and fair dealing against a former employer when the discharge is for a reason that violates public policy. *See Datto Inc. v. Braband,* 856 F. Supp. 2d 354 (D. Conn. 2012).  Here, Plaintiff discovered that one or more employees potentially violated criminal law during a company-sponsored event by possessing marijuana, which was discovered during a search conducted by the United States Coast Guard.  Criminal possession of illegal drugs is a blatant violation of public policy. Plaintiff reacted appropriately by briefly investigating this potential criminal conduct, and immediately reporting it to HR partner, Robert Bortman.  Shortly thereafter, Plaintiff was terminated.

Based on the following, the Court should deny Defendant's Motion to Dismiss Counts Two, Three and Four of the Amended Complaint.

## II.      STATEMENT OF FACTS

The facts underlying this action are detailed in Plaintiff's Amended Complaint [Dkt. No. 15].  Rather than repeat all of those facts here, Plaintiff addresses the facts only to the extent necessary to correct errors in Defendant's memorandum.

Without citing any evidence, Gartner asserts that Ms. Hahn, "provided alcohol to…the driver of the pontoon boat" on July 27, 2018 [Dkt. No. 21-1 at 4].  This statement is false.  Ms. Hahn purchased, "soda mixers, champagne and a case of water" for the team.  Another team member, Jake Fleet, brought a 12-pack of beer on the pontoon boat. [Dkt. No. 15 ¶¶ 54, 90].

No evidence exists to support Gartner's claim that Ms. Hahn provided any alcohol to Graham Scott, the sole driver of the pontoon boat [Dkt. No. 15 ¶ 58].  In fact, the only evidence regarding Graham Scott's consumption of alcohol on the boat comes from Gartner's account of a report by a team member who allegedly claimed he had consumed all 12 beers provided by Jake Fleet [Dkt. No. 15 ¶ 90].  Ms. Hahn neither purchased nor provided beer to any member of the team.  Moreover, she took all reasonable precautions to ensure the safety of her team members, making it clear that she would not allow them to drive home after drinking any alcohol, and implored them to plan accordingly [Dkt. No. 15 ¶ 54].

Gartner misrepresents additional facts, asserting that on August 31, 2018, "Mr. Bortman and two additional HR partners met with Plaintiff to inform her that the company was terminating her employment as a result of the events that took place on her team's boat day" [Dkt. No. 21-1 at 4].  Gartner fails to mention that Ms. Hahn's supervisors, Ashlee Horn and Val McClausland were also present at this meeting [Dkt. No. 15 ¶ 101].

Gartner's statement indicating Ms. Hahn was told that, "the company was terminating her employment as a result of the events that took place on her team's boat day", [Dkt. No. 21-1 at 4]

is patently false.  Rather, Ms. Hahn was told that, "Gartner had decided to make an example of

her", because, "drinking alcohol at a Gartner sponsored function was a 'violation of company

policy'" [Dkt. No. 15 ¶ 101].  This statement was blatantly untrue because alcohol is regularly

provided at Gartner-sponsored social events, both on company premises and off.

Finally, Gartner's argument that the allegations in the Amended Complaint fail to support

the existence of a contractual relationship between Ms. Hahn and Gartner is not supported by the

law.  "[A]ll employer-employee relationships not governed by express contracts involve some

type of implied 'contract' of employment." *Sowell v. Dicara*, 2015 WL 1867351, at *9 (Conn.

Super. Mar. 26, 2015). "There cannot be any serious dispute that there is a bargain of some kind;

otherwise the employee would not be working." *Torosyan v. Boehringer Ingelheim*

*Pharmaceuticals, Inc.*, 234 Conn. 1, 13, 662 A.2d 89 (1995) (quoting H. Perritt Employee

Dismissal Law and Practice (3d Ed.1992) § 4.32, p. 326).

Even in the absence of an express employment contract, Connecticut has recognized a

cause of action for discharged at-will employees for breach of implied covenant of good faith

and fair dealing where, "the discharge is for a reason that violates public policy"  *Paul v. Bank of*

*Am., N.A.*, 2011 WL 5570789, at *3 (D. Conn. Nov. 16, 2011); *see also Datto Inc. v. Braband*,

856 F. Supp. 2d 354, 373–74 (D. Conn. 2012).  Ms. Hahn has alleged facts demonstrating that

she was terminated in retaliation for reporting the possession of drugs by a coworker, in violation

of clearly established public policy.

III.    **STANDARD OF REVIEW**

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must

accept the factual allegations set forth in the complaint as true, and draw all reasonable

inferences in favor of the plaintiff. *See Napoletano v. Damianos Realty Group*, 2007 WL

1160411 at 2 (U.S.D.C., E.D. New York) (April 18, 2007); *see also Cleveland v. Caplaw Enterp.*, 448 F.3d 518, 521 (2d Cir.2006); *see also Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir.2005). At the pleading stage, a Court considers only whether the complaint includes factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To survive a motion to dismiss, a plaintiff need not allege specific facts establishing a *prima facie* case. Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). The standard is one of "flexible plausibility" *Boykin v. Key Corp.*, 521 F.3d 202, 213 (2d Cir. 2008).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Additionally, to state a plausible claim, a plaintiff's complaint must have "enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the claim. *Edwards v. North American Power and Gas, LLC*, 120 F.Supp.3d 132, 136 (D. Conn. August 4, 2015). "[A] claim should only be dismissed at the pleading stage where the allegations are so general, and the alternative explanations so compelling, that the claim no longer appears plausible." *Id*. Further, dismissal is warranted only if, "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Flores v. S. Peru Copper Corp.*, 343 F.3d 140, 148 (2d Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The appropriate inquiry is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Napoletano*, at 2, quoting *Twombly v. Bell Atl. Corp.*, 425 F.3d 99, 106 (2d Cir.2005). The function of a motion to dismiss is "not to weigh the

5

evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3 Int'l Brotherhood of Elec. Workers*, 905 F.2d 35, 37 (2d Cir.1990).

## IV.   ARGUMENT

### A.   Connecticut Law Applies to Plaintiff's Claims in Counts Two, Three and Four.

Finding no basis to challenge this Court's jurisdiction, Gartner instead argues that Ms. Hahn's "claims are governed by Florida law; as such, she may not avail herself of claims under [Connecticut statute]" [Dkt. No. 21-1 at 1].  The principle is well established that, "[i]n analyzing the choice of law question in a diversity case, federal courts apply the choice of law principles of the jurisdiction in which they sit." *Liberty Mut. Ins. Co. v. Harco Nat. Ins. Co.*, 990 F. Supp. 2d 194, 200 (D. Conn. 2013).  Under Connecticut choice of law principles, Connecticut law should be applied to Plaintiff's claims in Counts Two, Three and Four.

#### 1.   Plaintiff's Claims in Counts Two and Three Will Yield the Same Results Under the Laws of Connecticut as Under the laws of Florida.

As a preliminary matter, the threshold choice of law issue is whether there is an outcome determinative conflict between applicable laws of the states with a potential interest in the case. "If not, there is no need to perform a choice of law analysis, and the law common to the jurisdiction should be applied." *McLoughlin v. People's United Bank, Inc.*, 2009 WL 2843269, at *5 (D. Conn. Aug. 31, 2009).

Under modern conflicts-of-law theory, where there is a 'false conflict' such that the laws of both states relevant to the set of facts are the same, or would produce the same decision in the lawsuit, there is no real conflict between them.  "In such a case, the case ought to be decided under the law that is common to both states ... It is only after a determination is made that there is indeed an actual conflict between the laws of

the particular jurisdictions that the interests of the respective jurisdictions are

analyzed." *Suresky v. Sweedler*, 2010 WL 2105617, at 5 (Conn. Super. Ct. Apr. 9, 2010).

"When the applicable law of a foreign state is not shown to be otherwise, we presume it to be the

same as our own." *Gen. Star Indem. Co. v. Travelers Indem. Co.*, CV0840233383S, 2013 WL

1849285, at *8 (Conn. Super. Apr. 9, 2013) (quoting *Walzer v. Walzer*, 173 Conn. 62, 76, 376

A.2d 414 (1977)).

In the present case, Gartner has pointed to no potential conflict between Connecticut law

and Florida Law that would lead to a different resolution of Plaintiff's claims in Count Two or

Three. *See Klewin v. Highland Hills Apartments, LLC*, 2018 WL 1769309, at *2 (Conn. Super.

Mar. 15, 2018); *see also Cohen v. Roll–A–Cover, LLC*, 131 Conn. App. 466, 465-66,  27 A.3d 1,

cert. denied, 303 Conn. 915, 33 A.3d 739 (2011) ("the defendants have failed to indicate in their

appellate brief how the application of any other law would have conflicted with the provisions of

CUTPA. Consequently, we determine that a choice of law analysis is inappropriate under these

circumstances").  On the contrary, Ms. Hahn's claims against Gartner for unlawful gender

discrimination and whistleblower retaliation would yield the same result under Florida law as

under Connecticut law.  Thus, there is no conflict and applying Florida vs. Connecticut law is an

entirely moot point.

Like Conn. Gen. Stat. § 46a–60(a)(1) (CFEPA), The Florida Civil Rights Act of 1992

§760.01 *et seq*. (FCRA) follows Title VII in analyzing gender discrimination claims.  *See Kaytor*

*v. Elec. Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010); *see also Washington v. School Bd. Of*

*Hillsborough County*, 731 F. Supp. 2d 1309 (M. D. Fla. 2010).

Additionally, the elements of a cause of action for retaliatory discharge are identical

under the Connecticut and Florida state whistleblower statutes.  Both require a genuine issue of

material fact exists as to the following elements: (1) that there was a statutorily protected

expression; (2) that an adverse employment action occurred; and (3) that there was a causal link

between the participation and the adverse employment action. (Conn. Gen. Stat. Ann. § 31-51m);

(Fla. Stat. Ann. § 448.102).

Thus, there is no conflict between the laws of Connecticut and the laws of Florida with

regard to Plaintiff's Counts Two and Three, and Plaintiff's claims here should be properly

adjudicated under Connecticut law.

> 2. Choice of Law Principles Dictate that Connecticut Law Apply to
> Counts Two, Three and Four as the State with the "Most Significant
> Relationship" to Plaintiff's Claims.

Even if the Court determines that Ms. Hahn's claim for breach of the implied covenant of

good faith and fair dealing would yield a different result if analyzed under Florida law,

Connecticut choice of law principles dictate that Plaintiff's Count Four be adjudicated under

Connecticut law.

Connecticut has substantially adopted the Restatement (Second) of Conflict of Laws for

its choice of law rules. *See General Accident Ins. Co. v. Mortara,* 314 Conn. 339, 346, 101 A.3d

942 (2014) (noting that section 188 of the Restatement (Second) governs contracts without

choice of law provisions).   Under Section 188(2), the Court considers several factors to

determine the law that should be applied, including: (1) "the place of contracting; (2) the place of

negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of

the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of

business of the parties." *Doctor's Associates, Inc. v. Alemayehu*, 321 F. Supp. 3d 305, 308 (D.

Conn. 2018) (internal quotation marks omitted).   "These contacts are to be evaluated according

to their relative importance with respect to the particular issue." *W. Dermatology Consultants,*

*P.C. v. VitalWorks*, Inc., 153 A.3d 574, 584 (Conn. 2016) (quoting 1 Restatement (Second), *supra*, § 145 (2), p. 414).

The Connecticut Supreme Court noted that, "it is the significance, and not the number, of § 145(2) contacts that determines the outcome of the choice of law inquiry under the Restatement [Second] approach" *Id* at 575.  Connecticut's connection with the facts in *VitalWorks* was limited it being the location where, "the parties' relationship initiated" *Id*.  Under such circumstances, the Court determined that, "these factors alone do not outweigh the significant contacts to New Mexico" *Id*.

The most significant relationship to the facts of the present case is with the state of Connecticut.  Not only was Ms. Hahn recruited, interviewed, and hired in Connecticut, but Gartner itself maintains its principal place of business – its headquarters – here in Connecticut as well [Dkt. No. 15 ¶¶ 2,9].  Where, as in this case, "[n]egotiation, performance, and places of business are roughly split", between two states, the Court will apply Connecticut law based on its "strong interest in adjudicating cases which concern Connecticut companies, and which implicate Connecticut statutory and common law causes of action"  *Bull Bag, LLC v. Remorques Savage, Inc.*, 2017 WL 3763836, at 4, 6 (D. Conn. Aug. 30, 2017).

Accordingly, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is properly governed by Connecticut common law.

3.   <u>Plaintiff's Count Four States a Viable Claim for Breach of the Implied</u>
<u>Covenant of Good Faith and Fair Dealing under Connecticut Law</u>

In the state of Connecticut, Ms. Hahn's status as an at-will employee does not bar her recovery for Gartner's bad faith dealings. "[A]ll employer-employee relationships not governed by express contracts involve some type of implied 'contract' of employment." *Sowell v. Dicara*, 2015 WL 1867351, at *9 (Conn. Super. Mar. 26, 2015).

In fact, courts have routinely applied the breach of good faith analysis to the at-will employment arena, where an employee is not otherwise protected by an express contract. "[T]he Connecticut Supreme Court has restricted the applicability of the good faith and fair dealing principle to the context of at will employment arrangements" to further the goal of fulfilling "the reasonable expectations of the parties" *Magnan v. Anaconda Industries, Inc*., 193 Conn. 558, 572, 479 A.2d 781 (1984).

### B.  Plaintiff Has Alleged a Prima Facie Case Under Count Three Pursuant to Section 31-51m.

Ms. Hahn has successfully established a *prima facie* case of retaliation under Connecticut's whistleblower statute by alleging facts demonstrating that: (1) she engaged in protected activity when she reported illegal activity by a coworker to Gartner's Human Resources Department; (2) she was subsequently terminated; and (3) there is a clear causal connection, evident from the zero-tolerance drug policy distributed to her team members immediately before her termination.  Conn. Gen. Stat. Ann. § 31-51m; *Karagozian v. Luxottica Retail N. Am.*, 147 F. Supp. 3d 23 (D. Conn. 2015).

Under Connecticut General Statute § 31-51m(b) "[n]o employer shall discipline or penalize ... any employee because the employee ... reports ... a violation or a suspected violation of any state or federal law or regulation ... to a public body ..." *Chenarides v. Bestfoods Baking*, No. CV030197877S, 2005 WL 1088983, at *3 (Conn. Super. Ct. Mar. 30, 2005).

Interpreted narrowly, Section 31-51m only protects so-called "external" whistleblowing *i.e.*, to a public authority, as opposed to "internal" whistleblowing, *i.e.*, within the employer's organization. The present case falls within the second category, as Ms. Hahn reported the possession of marijuana by one of her team members to Human Resources, not to a public body.

Connecticut courts have nonetheless held that the public policy embodied in § 31-51m can support common law actions for retaliation involving internal as well as external whistleblowing.[1]  The Supreme Court stated that an action may stand in the absence of a direct statutory violation, "where an employee's discharge offends the public policy expressed in the statute." *Thibodeau v. Design Grp. One Architects, LLC*, 260 Conn. 691, 802 A.2d 731 (2002); See also *Barbierri v. Pitney Bowes, Inc.*, No. FSTCV126014221S, 2014 WL 7525558, at *3 (Conn. Super. Ct. Nov. 26, 2014).

The United States District of Connecticut explained in detail the rationale behind liberal construction: "[a] rule that would permit the employer to fire a whistleblower with impunity before the employee contacted the authorities would encourage employers promptly to discharge employees who bring complaints to their attention, and would give employees with complaints an incentive to bypass management and go directly to the authorities. This would deprive management of the opportunity to correct oversights straightaway, solve the problem by disciplining errant employees, or clear up a misunderstanding on the part of a whistleblower. The likely result of a contrary rule would be needless public investigations of matters best addressed internally in the first instance. Employers benefit from a system in which the employee reports suspected violations to the employer first; the employee should not, in any event, be penalized for bestowing that benefit on the employer." *Sullivan v. Massachusetts Mutual Life Ins. Co.*, 802 F.Supp. 716, 724-25 (D.Conn. 1992).

---

[1] The Florida Whistleblower Statue (Fla. Stat. Ann. § 448.102) also has been extended to internal as well as external reporting. See *Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904, 916 (Fla. 4th Dist. App. 2013) ("By immediately and repeatedly reporting this matter to his superiors and describing these acts as 'against the law,' [the plaintiff] created a sufficient prima facie showing to satisfy [the protected activity] requirement.")

Although "Gartner's internal Human Resources employees do not fall within the statutory definition of a 'public body'", Gartner ignores the stated public policy rationale behind liberal interpretation of the statute by Connecticut courts in cases such as this, where, "permitting the discharge to go unaddressed would leave a valuable social policy to go unvindicated." [Dkt. No. 21-1 at 10], citing *Burnham v. Karl & Gelb*, P.C., 252 Conn. 153, 160–61 (2000); *Burnham* at 182. Thus, an action for retaliation can be based on Connecticut's public policy even in the absence of a direct statutory violation, as long as the public policy embodied in the statute supports said action. "In particular, the action stands if the legislature has not made a policy choice to exclude from protection the particular plaintiff bringing the action." *Chenarides v. Bestfoods Baking* at *4.

*Calderon v. Dinan & Dinan PC*, cited by Gartner, is readily distinguishable from the instant case in that it involved neither internal nor external employee reporting of any potential wrongdoing that might implicate public policy. *Calderon v. Dinan & Dinan PC*, Civil No. 3:05cv1341(JBA), 2006 WL 1646157, at *6 (D. Conn. June 13, 2006) (no showing of retaliation by employer where employee did not allege that before her termination she reported her suspicions about employer wrongdoing).

The Connecticut Supreme Court ruled in *Trusz v. UBS Realty Investors* that an employee had stated a cause of action for retaliatory discharge based on his report made to management of his employer's participation in practices which breached fiduciary duties it owed to its investors. *Trusz v. UBS Realty Inv'rs, LLC*, 123 A.3d 1212 (Conn. 2015); *see also Van Kruiningen v. Plan B, LLC*, 485 F. Supp. 2d 92 (D. Conn. 2007).

Connecticut's strong public policy against the possession or use of drugs in the context of employment supports a cause of action for whistleblower retaliation against an employee who, like Ms. Hahn, reports such misconduct to Human Resources.

**C.   The Amended Complaint States a Claim Against Gartner for Breach of the Covenant of Good Faith and Fair Dealing Under Both Connecticut and Florida Law.**

1.   Plaintiff Sufficiently Alleges a Claim for Breach of Good Faith and Fair Dealing Under Connecticut Law.

As noted above, under Connecticut law, breach of the implied covenant of good faith and fair dealing need not be predicated on an express contract term.  While Gartner cites cases in which express contract terms formed the basis of each plaintiff's claim for breach of good faith and fair dealing, none of those cases have limited the application of this cause of action to exclude the at-will employment setting. *Collins v. Anthem Health Plans, Inc.,* 275 Conn. 309, 333–34 (2005); *Bellemare v. Wachovia Mortg. Corp.*, 894 A.2d 335, 345 (Conn. App. 2006), aff'd, 931 A.2d 916 (Conn. 2007) ("a claim brought pursuant to a contract, alleging a breach of the implied covenant of good faith and fair dealing, sounds in contract").

The Connecticut Supreme Court explained, "to prevail on the ... count of [a] complaint [that] alleged the existence of an implied agreement between the parties, the plaintiff ha[s] the burden of proving by a fair preponderance of the evidence that [the employer] had agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment to him under which he could not be terminated without just cause." *Coburn v. Charter Oak Health Ctr., Inc.*, HHDCV146049296S, 2015 WL 544535, at *6 (Conn. Super. Jan. 13, 2015); quoting *Magnan v. Anaconda Industries, Inc.*, 193 Conn. 558, 566–72, 479 A.2d 781 (1984)

Here, unlike in *Coburn*, Ms. Hahn's allegations recite clearly an, "express or implied contract term[ ] or specifically promised benefit that the defendant is alleged to have breached."

*Coburn* at 6.  "It is firmly established that statements in an employer's personnel manual may ... under appropriate circumstances ... give rise to an express or implied contract between employer and employee." *Marini v. Costco Wholesale Corp.*, 64 F. Supp. 3d 317, 328 (D. Conn. 2014) (citation omitted); see also *Sowell v. Dicara*, 2015 WL 1867351, at *9 (Conn. Super. Mar. 26, 2015).

Ms. Hahn's allegations include Gartner's specific promise not to retaliate against her for reporting, "illegal, unethical or otherwise improper business activity, as well as all instances of employee violations of this Code of Conduct or any of the other Gartner policies." [Dkt. No. 15 ¶ 71].  Ms. Hahn has further alleged that Gartner breached this agreement when it terminated her employment [Dkt. No. 15 ¶ 101].

Even in the absence of any express contract, Connecticut courts have extended the application of the duty of good faith and fair dealing to at-will employment contexts where a public policy violation is shown.  *See Beauregard v. BTC West Hartford, LLC*, 2013 WL 7088324, at *8 (Conn. Super. Ct. Dec. 27, 2013); *see also Magnan v. Anaconda Industries, Inc.*, 193 Conn. 558, 566–72, 479 A.2d 781 (1984).

In order to state a claim for breach of the implied covenant of good faith and fair dealing, an at-will employee must allege, "a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." *McKinstry v. Sheriden Woods Health Care Ctr., Inc.*, 994 F. Supp. 2d 259, 267 (D. Conn. 2014); quoting *Morris v. Hartford Courant Co.*, 200 Conn. 676, 679, 513 A.2d 66 (1986); *see also Datto Inc. v. Braband*, 856 F. Supp. 2d 354, 373 (D. Conn. 2012) ("D[efendant] breached its obligation of good faith and fair dealing by unfairly preventing [plaintiff] from obtaining the compensation which she

was owed, by failing to comply with its own representations, and by terminating her without good cause").

Here, Ms. Hahn alleges that she was terminated in retaliation for reporting unlawful activity by a coworker – the illegal possession of marijuana.  There can be no doubt that Gartner's action in terminating her for reporting the illegal possession of drugs runs afoul of Connecticut's "strong and well-established public policy" discouraging retaliation against employees who report illegal conduct to their employers.  *Berte v. Haddam Hills Acad., Inc.*, 2005 WL 3624553, at *4 (Conn. Super. Dec. 16, 2005).  Ms. Hahn's allegations are sufficient to demonstrate that Gartner breached its duty of good faith and fair dealing under Connecticut law.

2.  Even if Florida Law Applies, Plaintiff Should be Granted Leave to Replead Under Florida Law.

As previously discussed, this Court should apply Connecticut law when reviewing Ms. Hahn's claim for breach of the covenant of good faith and fair dealing. However, if the Court is inclined to apply Florida law, rather than Connecticut law, Plaintiff should be granted leave to amend her pleadings.  "[T]he Supreme Court indicated that a court should deny leave to amend a pleading only when: (1) the amendment would be prejudicial to the opposing party, (2) there has been bad faith or undue delay on the part of the moving party, or (3) the amendment would be futile." *Rg Golf Warehouse, Inc. v. The Golf Warehouse, Inc.*, 217CV695FTM29MRM, 2018 WL 4193218, at *1 (M.D. Fla. Aug. 6, 2018); quoting *Taylor v. Florida State Fair Authority*, 875 F. Supp. 812, 815 (M.D. Fla. 1995).

In the event that the Court decides to apply the Florida law to Plaintiff's claim for breach of good faith and fair dealing, the Court should grant Ms. Hahn leave to replead her claim under Florida law.  *See Stanley Works Israel Ltd. v. 500 Group, Inc.*, 332 F. Supp. 3d 488, 505 (D. Conn. 2018) ("Plaintiff's decision to replead its claims in response to Defendants' motion to

15

dismiss is not just proper, it is prescribed and promoted by the Federal Rules. Moreover, if the

original complaint was subject to dismissal for reasons that could be cured, any dismissal would

have been without prejudice, giving Plaintiff an opportunity to replead those claims.")[2]

## V.       CONCLUSION

Ms. Hahn's Amended Complaint sufficiently alleges causes of action against Gartner for

violations of Conn. Gen. Stat. § 31-51m, § 46a-60, and the breach of the covenant of good faith

and fair dealing under Connecticut law.  Plaintiff respectfully requests that the Court deny

Defendant's Motion to Dismiss with regard to Counts Two, Three and Four.  If the Court is

inclined to agree that Florida law should be applied to any of the aforementioned claims, Plaintiff

respectfully requests leave to replead such claims.

PLAINTIFF
ERICA HAHN

By:/s/ Jill Saluck
Jill Saluck (ct30331)
Mark P. Carey (ct17828)
Carey & Associates, P.C.
71 Old Post Road, Suite One
Southport, CT 06890
(203) 255-4150 tel
(203) 255-0380 fax
jsaluck@capclaw.com

*Her Attorneys*

---

[2] Under Florida law, Ms. Hahn alleges facts sufficient for a *prima facie* showing of promissory estoppel. See *Winnie v. Infectious Disease Associates, P.A.*, 750 Fed. Appx. 954, 963–64 (11th Cir. 2018) (unpublished) ("a promise made without consideration may nonetheless be enforced to prevent injustice if the promisor reasonably should have expected the promisee to rely on the promise and if the promisee did actually rely on the promise to her detriment.")

## <u>CERTIFICATE OF SERVICE</u>

THIS IS TO CERTIFY, that the foregoing was filed electronically via ECF on this the 16th day of July, 2019, and delivered via email and regular mail, postage prepaid to all those unable to receive electronic filings via ECF.

>Daniel A. Schwartz
>Keegan A. Drenosky
>Shipman & Goodwin LLP
>One Constitution Plaza
>Hartford, CT 06103-1919
>dschwartz@goodwin.com

>/s/ Jill Saluck
>Jill Saluck